By the Court.—Truax, J.
In October, 1883, Mr. Stokes, at the request of Mr. Frost, lent him the sum of $6,200.
At the time this loan was made, Mr. Frost gave to Mr. Stokes a certain paper, in and by which he promised to pay to Mr. Stokes or order, at the house of Mr. *83 Stokes, 37 Madison Avenue, $6,200, on demand, with interest at 12 per cent, per annum.
This paper also recited that the said Frost had deposited with the said Stokes, as collateral security, one hundred shares of Mutual District Telegraph Company stock, and ten shares of Mutual District Messenger Company, limited, stock, which was then in the hands of Butler, Stillman & Hubbard, trustees, and it authorized the said Stokes to sell said stock without notice, at the Board of Brokers, or at public or private sale, at the option of the said Stokes, in case of non-payment by said Frost, and to apply the net proceeds of the sale to the payment of the indebtedness, including interest.
Mr. Frost did not pay the note on demand, and thereupon Mr. Stokes, at private sale, disposed of the col-, lateral, but not for a sum sufficient to pay the amount of Frost’s indebtedness to him.
It is to recover the amount due him that Mr. Stokes brings his action, while Mr. Frost brings his action to recover the value of the stock which he alleges has been converted by Mr. Stokes.
■ Mr. Frost claims that the transaction between himself and Mr. Stokes was usurious and void, because of the agreement to pay more than the legal rate of interest, while Mr. Stokes says that the said transaction is within chapter 237 of the Laws of 1882, and therefore is not usurious and void.
That chapter provides that “ in any case hereafter in which advances of money, re-payable on demand, to an amount not less than $5,000, are made upon warehouse receipts, bills of lading, certificates of stock, certificates of deposit, bills of exchange, bonds, or other negotiable instruments, pledged as collateral security for such repayment, it shall be. lawful to receive, or to contract to receive and collect, as compensation for making such advances, any sum to be agreed upon in writing by the parties to the transaction.”
The loan made by Mr. Stokes was rc-payable on de *84 mand,'and was for more than $5,000. It was made upon certain certificates of stock which were pledged with the lender as collateral security for such repayment.
The appellant contends that it was the intention of the legislature to protect only instruments that are negotiable, and he also contends that the certificates pledged by him were not negotiable, because they were then in the hands of trustees, and that therefore the transaction was not protected by the Act above referred to.
It is to be noticed that none of the securities mentioned in the statute, except bills of exchange, are strictly negotiable, and therefore the statute must be construed to mean that a loan may be made upon warehouse receipts,.....bonds, or other instruments which are negotiable. But if it was intended to class certificates of stock with negotiable instruments, then the mere fact that these certificates had been deposited with trustees, under certain agreements, did not make them non-negotiable.
On the execution of the agreement between the appellant and the respondent, the certificates came into the constructive possession of the respondent, for the trustees then became the agents of the respondent and held the stock for him.
At the time the pledge was made the appellant gave to the respondent the usual powers of attorney to transfer the stock.
On the 6th day of February, through those powers of attorney, the respondent surrendered the two stock certificates which were then standing in appellant’s name, and procured to be issued to him new certificates in his own name.
' This was more than a month prior to the time of the respondent’s demand for the repayment of the loan,, and was, so the appellant claims, a conversion of the stock-at that time.
*85 But it is to be noticed that in his complaint the plaintiff does not allege that the conversion was made on the 6th day of February, 1884. He alleges that the conversion was made at the time that the respondent sold the certificates of stock, after the demand was made by him on the appellant, for the repayment of the loan. Nor does the appellant allege in his complaint any demand by him before the bringing of his action for said certificates of stock. Moreover, the evidence shows that the respondent had the certificates of the shares with him at the time he made the demand for repayment on the appellant, and then, if the appellant had complied Avith the demand, and had repaid the money, the certificates would have been returned to him. But the appellant refused so to do. He refused to pay any more than six per cent., which he claimed was the legal rate of interest. The appellant also claims that there Avas no legal demand made on him for the repayment of the money, and he bases this claim on the provision in the note that the money should be repaid at the house of the respondent.
There is no evidence that any demand was made at the house of the respondent, but we are of the opinion that this place Avas not a place fixed as the only place where a demand could be made.
A demand was made, and at the time of the demand the note, and stock collateral to it, were tendered. This is all that was required by the contract between the parties. °
The vieAV that we have taken renders it unnecessary for us to discuss, the alleged errors as to the rulings of the referee on the evidence relating to the measure of damages.
The judgments appealed from are affirmed, Avith costs and disbursements.
Freedman, J., concurred.
Sedgwick, Ch. J.
In my opinion the judgments should be affirmed with costs.